UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CYNTHIA LAWLER, | Case No.: 10-CV-01131-LHK |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MONTBLANC N. AMERICA, LLC, ET AL., | (re: dkt. #36) |
| Defendants. | |

Plaintiff Cynthia Lawler ("Plaintiff") brings suit against her former employer Montblanc North America LLC ("Montblanc") and Montblanc's Chief Executive Officer Jan-Patrick Schmitz under four causes of action: (1) disability discrimination against Montblanc only; (2) retaliation against Montblanc only; (3) harassment against both Montblanc and Schmitz; and (4) intentional infliction of emotional distress against both Montblanc and Schmitz. Presently before the Court is Defendants' motion for summary judgment with respect to all four causes of action. The Court deems this matter appropriate for resolution without oral argument and vacates the May 5, 2011 motion hearing, case management conference, and pretrial conference. *See* Civ. L. R. 7-1(b). For the reasons described below, the Court GRANTS Defendants' motion for summary judgment with respect to all four claims and closes the case.

## I. BACKGROUND[1]

Defendant Montblanc is a maker of fine writing instruments, jewelry, watches, and other luxury products, which it sells wholesale and retail through boutique stores in the United States. Plaintiff began her employment as a Manager of Montblanc's Santa Clara boutique store, located at Valley Fair Mall, in September 2001. *See* Deposition of Cynthia Lawler ("Lawler Dep.") at 32, attached as Exh. A to Defs.' Mot. for Summary Judgment ("Defs.' MSJ"). Plaintiff held this managerial position from September 2001 until her termination effective October 31, 2009. *Id.* According to Plaintiff's testimony, her duties as a boutique manager involved hiring, training and supervising sales staff, developing relationships with customers for the luxury end market, personally interacting with customers and handling customer complaints, overseeing the store's inventory, and preparing sales reports and other administrative work. *Id.* at 21, 30. As of August 2009, the last time Plaintiff performed any duties as a Montblanc employee, the Santa Clara boutique had four full-time employees, including Plaintiff, and two-part time employees. *Id.* at 54-55. In the months before her last day of work in August 2009, Plaintiff worked between sixty and seventy hours a week, all of that in the store. *Id.* at 32, 62. Finally, Plaintiff testified that the store operates increasingly longer hours in the holiday season between November and January, and that the sales in those weeks account for a third of the store's annual sales. *Id.* at 56-58.

In June 2009, Plaintiff was diagnosed with a chronic medical condition known as psoriatic arthritis. In a note dated June 30, 2009, Plaintiff's rheumatologist, Dr. Neelakshi Patel, recommended that Plaintiff work reduced hours of twenty hours per week "due to medical reasons." *See* Exh. 4 to Pl.'s Opp'n to Defs.' Mot. for Summary Judgment ("Pl.'s Opp'n"). In July 2009, however, Plaintiff worked thirty-six to forty hours a week in order to keep the store operating while others were sick or out on vacation. *See* Lawler Dep. 67-68.

---

[1] For purposes of ruling upon Defendants' motion for summary judgment, the Court, as did Defendants, accepts Plaintiff's version of disputed facts as true. However, the Court does not rely on "mere allegations or denials," as Plaintiff, the party opposing summary judgment, must set forth specific facts showing that there is a genuine issue for trial. *See Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

Dr. Patel, in a note dated July 20, 2009, excused Plaintiff from work on July 20 and 21, 2009 due to "medical reasons," and stated that Plaintiff may return on July 22, 2009. *See* Exh. 4 to Pl.'s Opp'n. On July 23, 2009, Plaintiff sent an e-mail to her immediate supervisor, Montblanc's Regional Director Teresa Eyre, informing Ms. Eyre of Dr. Patel's recommendation regarding reduced work hours. *See* Exh. 5 to Pl.'s Opp'n. On July 24, 2009, Plaintiff had a telephone conversation with Mary Gorman, Montblanc's Human Resources Director, to discuss the reduced-hours recommendation. *See* Pl.'s Opp'n at 4. According to Plaintiff, Ms. Gorman expressed concern about the recommendation to work reduced hours. On July 25, 2009, Plaintiff sent Ms. Gorman a follow-up e-mail, with an attachment indicating the hours Plaintiff had worked since June 30, 2009. *See* Exh. 6 to Pl.'s Opp'n.

On July 29, 2009, Ms. Gorman wrote an e-mail asking Plaintiff to provide additional information with respect to the reduced-hours recommendation. Specifically, Ms. Gorman wrote:

> This letter is a follow-up to our conversation regarding your request for a reduced work week of no more than 25 hours per week, due to your medical condition.
>
> As you know, the nature of your position as Boutique Manager makes it essential that you personally be present at the store to perform among other duties: supervise and coach sales associates; interact with and provide service to customers; and manage the store's operations. Thus, Boutique Managers typically are present in the store at least 40 hours per week.
>
> We will need to assess whether we can accommodate your request for reduced hours, or if there is some other accommodation that would enable you to perform the essential functions of your position. Kindly have your treating doctor provide us, in writing, details of the following: (i) the nature, severity and duration of your impairment; (ii) the activities the impairment limits; (iii) the extent to which the impairment limits your ability to perform those activities; (iv) what, if any, accommodation can be provided that would enable you to perform the essential functions of your position. Kindly have your doctor provide us with this information as soon as possible.

*See* Exh. 7 to Pl.'s Opp'n. On August 4, 2009, before Plaintiff or her treating doctor had an opportunity to respond to the request for additional information, Plaintiff fell at home and broke her foot. *See* Lawler Dep. at 86. The next day, August 5, 2009, Plaintiff's podiatrist, Dr. Matthew Smith, set Plaintiff's foot and put on an orthopedic shoe. *Id*. at 79-80. Dr. Smith wrote Plaintiff a note advising that she would be unable to work from August 5, 2009 to September 2, 2009 because Plaintiff had fractures on her third and fourth toes. *See* Exh. L to Defs.' MSJ.

On August 5, 2009, after her examination with the podiatrist, Plaintiff called to inform Ms. Gorman of the accident, and to explain her need for temporary medical disability leave. Ms. Gorman asked Plaintiff to fax medical documentation so that she (Ms. Gorman) could inform Montblanc's disability carrier. Not having a fax machine at home, Plaintiff drove from the podiatrist's office to the Santa Clara boutique store in order to fax the medical documentation and to call her Regional Supervisor, Ms. Eyre, to advise her of the need for disability leave.[2]

While Plaintiff was using the fax machine in the store's back office, Schmitz and Montblanc's Vice President of Retail, Michael Giannattasio arrived on a routine inspection-visit.[3] *See* Lawler Dep. 90. According to Plaintiff, Schmitz, in an "abrupt, brisk" manner, asked her why she was not dressed properly, to which Plaintiff responded she was "off work on disability." *Id*. at 96. Schmitz then advised Plaintiff that he and Giannattasio were going to walk around the mall to check out the competition, which, according to Plaintiff, was "a customary procedure when a visit occurs." *Id*. Plaintiff responded that she would not be there and needed to go home, but Schmitz said, "We will talk when I get back," and was very "intimidating," "abrupt," and "gruff." *Id*.

Schmitz and Giannattasio returned to the store around thirty to forty minutes later. Schmitz told Plaintiff they needed to look around the store, and stared at Plaintiff until she walked onto the sales floor. *Id*. at 100. According to Plaintiff, Schmitz "herded" Plaintiff and the other present employees around the store, criticized Plaintiff for not having the latest eyewear on display, and "just got mad" when Plaintiff tried to answer his questions. *Id*. at 101. At one point, Plaintiff's co-worker accidentally stepped on her broken foot, after which Plaintiff remained sitting in a chair. *Id*. Schmitz then asked Plaintiff about the specific demographics of the customers and the area,

---

[2] Plaintiff's Opposition, at page 5, states: "Not having a fax machine at her home, Gorman [sic] is driven to the Montblanc store at the Valley Fair Center in Santa Clara by her daughter in order to fax the materials. (undisputed)." The Court presumes that "Gorman" actually refers to Plaintiff. However, the representation that Plaintiff was driven to the store by her daughter is not supported by the record. *See* Lawler Dep. 90 ("Q: How did you get either to the doctor's office or from the doctor's office to Montblanc, what mode of transportation did you use? A: Car. Q: Did somebody drive you or did you drive yourself? A: I think I drove myself. Q: So you were not accompanied by anyone to the doctor's office? A: No, I don't think so.").

[3] Defendants dispute Plaintiff's version of the interaction between Plaintiff and Schmitz. As noted above, the Court accepts Plaintiff's version as true for purposes of ruling on this motion.

4
Case No.: 10-CV-01131-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   and wanted Plaintiff to have all the information "on his desk by Monday" (August 5, 2009 was a

2   Wednesday). *Id*. at 102.  When Plaintiff reminded Schmitz that she was not working, Schmitz

3   said: "You will do it or else."  Plaintiff then responded: "Okay, I'll e-mail it from home." *Id*.

4   Although Montblanc maintains video footage of the store, the footage is overwritten thirty days

5   after it is taken.  Thus, the August 5, 2009 video footage was overwritten on or around September

6   5, 2009.

7   Shortly after Schmitz's visit, Plaintiff called her immediate supervisor, Ms. Eyre, to give

8   her a rundown of the visit, express concern about getting the paperwork done because Plaintiff was

9   on pain pills at that point, and to express concern about being fired for not doing the work. *Id*. at

10  108.  According to Plaintiff, Ms. Eyre told Plaintiff not to worry about the paperwork and that she

11  was sorry that Plaintiff had a bad visit.  *Id*.

12  By letter and by phone on August 11 and August 13, 2009, Plaintiff complained to

13  Montblanc's Human Resources Director, Ms. Gorman, about the way Schmitz spoke to and treated

14  her at the August 5, 2009 store visit.  *See* Exh. 8 to Pl.'s Opp'n.  Specifically, Plaintiff complained

15  that: (1) despite her medical situation, Schmitz expected her to stay at work while he and

16  Giannattasio walked around the mall evaluating the competition; (2) as a result of her remaining at

17  the store, a co-worker accidentally stepped on her foot causing her significant pain; and (3) again

18  ignoring her disability, Schmitz gave her assignments with short deadlines." *Id*.  Plaintiff also

19  expressed concern about "disciplinary action" and other consequences if she did not complete the

20  assignments.  In their August 13, 2009 phone conversation, Ms. Gorman, as did Ms. Eyre

21  previously, assured Plaintiff that she would not be fired for complaining about Schmitz, and

22  informed Plaintiff that her assistant manager would complete the requested work so that Plaintiff

23  did not have to worry.  Lawler Dep. 139.

24  On August 7, 2009, Dr. Patel changed the previous recommendation that Plaintiff work

25  reduced hours to a recommendation that Plaintiff not work at all until January 5, 2010 due to

26  Plaintiff's chronic condition of psoriatic arthritis.  *See* Exh. 12 of Pl.'s Opp'n.  On September 10,

27  2009, Ms. Gorman sent Dr. Patel a letter inquiring whether any accommodations could be made

28  that would allow Plaintiff to work as a Boutique Manager, and noted that the position did not

1    involve strenuous lifting or other physical activity. *See* Exh. N. to Defs.' MSJ. Ms. Gorman also
2    asked Dr. Patel to advise when, if at all, Plaintiff would be able to resume her regular duties. On
3    October 6, 2009, Dr. Patel responded that Plaintiff's condition had not changed, and thus the
4    recommendation that she not work at all until January 5, 2010 had not changed. *See* Exh. O to
5    Defs.' MSJ. Dr. Patel did not provide an answer as to when, if ever, Plaintiff could resume her
6    regular duties.

7    Plaintiff received short-term disability benefits through Montblanc from August through
8    mid-October 2009. On October 13, 2009, Ms. Gorman advised Plaintiff that Montblanc was
9    terminating her employment, as of October 31, 2009, because Plaintiff could not perform her
10   regular job duties as a Boutique Manager. *See* Exh. Q to Defs.' MSJ. Montblanc offered Plaintiff
11   a severance package, which Plaintiff declined.

12   Plaintiff has not worked, or applied for employment, since her termination from Montblanc.
13   Plaintiff applied for and exhausted Montblanc-provided and State-provided disability benefits
14   between August 2009 and October 2010 due to her inability to work. *See* Lawler Dep. 38-43. In
15   November 2010, Plaintiff has also applied for Social Security disability benefits on the grounds
16   that her medical condition renders her unable to work. *Id*. at 37-38.

17   Plaintiff filed suit in Santa Clara County Superior Court on February 16, 2010. Defendants'
18   removed the case, pursuant to diversity jurisdiction, on March 17, 2010. Now pending before the
19   Court is Defendants' motion for summary judgment.

20                                **II.   LEGAL STANDARDS**

21   Summary judgment is appropriate when it is demonstrated that there exists no genuine issue
22   as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See*
23   Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking
24   summary judgment bears the initial burden of informing the court of the basis for its motion and of
25   identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence
26   of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact
27   is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v.*
28   *Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" as to a material fact if

6

Case No.: 10-CV-01131-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See James River Ins. Co. v. Schenk, P.C.*, 519 F.3d 917, 925 (9th Cir. 2008). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *See Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *See Estate of Tucker*, 515 F.3d at 1030.

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *See Anderson*, 477 U.S. at 249-50; *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### III.  DISCUSSION

Plaintiff's Complaint includes four causes of action: (1) disability discrimination

under the California Fair Housing and Employment Act ("FEHA"), Cal. Gov. Code §12940(a); (2) retaliation under FEHA, Cal. Gov. Code §12940(h); (3) harassment under FEHA, Cal. Gov. Code §12940(j); and (4) intentional infliction of emotional distress. Defendants move for summary judgment on all four of Plaintiff's causes of action.

**A. First Cause of Action: Disability Discrimination (Cal. Gov. Code §12940(a))**

Under the California FEHA, it is unlawful for an employer to "refuse to hire or employ [a] person ... or to bar or discharge [a] person from employment ... or to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" based on a physical disability. See Cal. Gov. Code § 12940(a).[4] FEHA proscribes "an employer's intentionally discriminatory act against an employee because of . . . [the employee's] disability . . . ." *See Scotch v. Art Inst. of California-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1002 (2009). Courts use a burden-shifting framework to analyze discrimination claims under FEHA. To state a *prima facie* claim for unlawful discrimination on account of disability, a plaintiff must allege: (1) that she is disabled within the statutory definition; (2) that she is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) that she has suffered a discriminatory employment action on account of the disability. *See Le Bourgeois v. Fireplace Manufacturers, Inc.*, 68 Cal.app.4th 1049, 1058, 80 Cal. Rptr. 2d 660 (1988). If a plaintiff states a *prima facie* claim, the employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. *See Brundage v. Hahn*, 57 Cal. App.4th 228, 237 (1997). Finally, the plaintiff bears the burden of proving the employer's proffered reason was "pretextual." *Id*.

**1. Plaintiff has not established she was a "qualified individual" under FEHA**

Defendants do not challenge that Plaintiff is disabled. Instead, Defendants move to dismiss Plaintiff's first claim for relief on the grounds that Plaintiff has failed to establish that she is a

---

[4] It is also unlawful "[f]or an employer ... to fail to make reasonable accommodation for the known physical ... disability of an applicant or employee." *Id*. § 12940(m), and "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." *Id*. § 12940(n). However, Plaintiff *did not* bring suit under either Section 12940(m) (failure to make reasonable accommodation) or under Section 12940(n) (failure to engage in good faith interactive process) of FEHA. Nor did Plaintiff bring suit under the Americans with Disability Act, 42 U.S.C. §12101 *et seq*.

8
Case No.: 10-CV-01131-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1     "qualified individual" within the meaning of *Green v. State of California*, 42 Cal.4th 254 (2007)

2     and that she was terminated because of her disability. In *Green*, the California Supreme Court held

3     that "[b]y its terms, section 12940 makes it clear that drawing distinctions on the basis of physical

4     or mental disability is not forbidden discrimination *in itself*. Rather, drawing these distinctions is

5     prohibited *only if* the adverse employment action occurs because of a disability *and* the disability

6     would not prevent the employee from performing the essential duties of the job, at least not with

7     reasonable accommodation. Therefore, in order to establish that a defendant employer has

8     discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the

9     burden of proving he or she was able to do the job, with or without reasonable accommodation."

10    *See Green*, 42 Cal. 4th at 262 (emphasis in original).

11    The essential functions of a job are "the fundamental […] duties of the employment

12    position the individual with a disability holds or desires," not including "the marginal functions of

13    the position." *See* Cal. Gov. Code § 12926(f); *see also* 2 Cal. Code Regs. § 7293.8(g) (an

14    "essential job function" is a job duty that is fundamental to the position, as opposed to marginal or

15    peripheral). An employer's job description is considered to be the most reliable evidence of what a

16    particular job's essential functions are. *See Dark v. Curry County,* 451 F.3d 1078, 1087 (9th Cir.

17    2006) (interpreting analogous provision of the ADA). However, other relevant evidence that may

18    be considered in determining the essential functions of a job include the actual work experience of

19    current or past employees in the job, the amount of time spent performing a function, and the

20    consequences of not requiring that an employee perform a function. *See* Cal. Gov. Code §

21    12926(f)(2); 2 Cal. Code Regs § 7293.8(g)(2).

22    It is undisputed that the essential functions of a Boutique Manager include: hiring, training

23    and supervising sales staff, developing relationships with customers for the luxury end market,

24    personally interacting with customers and handling customer complaints, overseeing the store's

25    inventory, and preparing sales reports and other administrative work. *See* Lawler Dep. at 21, 30.

26    Moreover, as Plaintiff herself testified, the holiday sales period (between November and January)

27    is particularly important because it accounts for a third of the annual sales for the store. *Id*. at 56.

28

Although it was her burden to do so, Plaintiff has not established that she was qualified to perform the essential functions, with or without a reasonable accommodation, of a Boutique Manager at the time of her termination in October 2009 or that she would be able to perform any essential functions in January 2010.[5]  *See Swonke v. Sprint Inc.*, 327 F. Supp. 2d 1128, 1134 (N.D. Cal. 2004) (granting summary judgment on a FEHA disability discrimination claim where plaintiff did not establish he could work at all).  As related above, Plaintiff has not worked at all since going on disability leave in August 2009 and being terminated on October 13, 2009.  Plaintiff has introduced no evidence that she could work at all after August 2009, let alone work the in-store hours necessary for that of a Boutique Manager.  In fact, the only evidence in the record is that Plaintiff has been completely unable to work due to her chronic arthritic medical condition, and has received disability benefits because of her inability to work.  *See id*. at 33-35.

In sum, Plaintiff has introduced no evidence that she was qualified to perform the essential functions of the position for which she was terminated, and thus failed to make a *prima facie* disability discrimination claim.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's first cause of action.

### 2. **Plaintiff has also not established pretext for unlawful discrimination**

Even if Plaintiff had met her burden of establishing a *prima facie* claim (which she did not), Defendants have proffered a legitimate, non-discriminatory reason for the adverse employment decision: namely, the fact that Plaintiff did not come to work at the store or perform any duties of her position.  Thus, Plaintiff was required to prove that Defendants' decision was pretextual.

---

[5] Plaintiff cites two pre-*Green* cases that placed the *burden on the employer* to establish that the employee is not qualified.  *See Velente-Hook v. Eastern Plumas Health Care*, 368 F. Supp. 2d 1084 (E.D. Cal. 2005) (in a failure to accommodate case, as opposed to a disability discrimination case, denying employer summary judgment for failing to establish that employee could not work had she been given a reasonable accommodation); *see also Sargent v. Litton Systems, Inc.*, 841 F. Supp. 956 (N.D. Cal. 1994) (denying employer summary judgment where it terminated employee without establishing that employee could not have worked with some reasonable accommodation). Those cases are inapposite now that the California Supreme Court has expressly placed the burden on the employee to establish that she is qualified to perform the essential functions of the position, with or without reasonable accommodation.  Moreover, Plaintiff did not bring a cause of action for failure to accommodate under FEHA (Cal. Gov. Code §12940(m)), which generally involves an evaluation of what, if any, accommodations were available and requested.  Instead, Plaintiff brought suit for disparate treatment based on her disability under Section 12940(a) of FEHA, which involves a different analysis as to whether Plaintiff, with or without reasonable accommodation, could perform the essential functions of her position.

Case No.: 10-CV-01131-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1     "An employer's stated nondiscriminatory reasons need not necessarily have been wise or

2  correct." *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 358 (2000). "While the objective

3  soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is

4  simply whether the employer acted with a *motive to discriminate illegally*." *Id*. (emphasis in

5  original). "Thus, 'legitimate' reasons in this context are reasons that are *facially unrelated to*

6  *prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*." *Id*. (emphasis

7  in original) (citation omitted). "[E]ven where the plaintiff has presented a legally sufficient prima

8  facie case of discrimination, and has also adduced some evidence that the employer's proffered

9  innocent reasons are false, the fact finder is not *necessarily* entitled to find in the plaintiff's favor."

10  *Id*. at 361-62 (emphasis in original). "Whether judgment as a matter of law is appropriate in any

11  particular case will depend on a number of factors. These include the strength of the plaintiff's

12  prima facie case, the probative value of the proof that the employer's explanation is false, and any

13  other evidence that supports the employer's case[.]" *Id*. at 362.

14     Unlike the issue of her qualifications to perform the essential functions of the position,

15  Plaintiff does at least point to some evidence for her pretext argument. First, Plaintiff argues that

16  Defendants took seven months to hire another manager (i.e., until May 2010). Second, Plaintiff

17  argues that Defendants provided Plaintiff less leave than that provided under Defendants' Family

18  and Medical Leave Act ("FMLA") policy. Neither of Plaintiff's arguments is persuasive.

19     That it took seven months to hire another manager is not inconsistent with Defendants'

20  position that a store manager has to actually be in the store to perform the essential job functions.

21  In fact, according to Montblanc's HR Director, Ms. Mary Gorman, Montblanc used the regional

22  manager, Ms. Teresa Eyre and the Santa Clara boutique's assistant manager, Paul Bunag, to take

23  over the duties of the Boutique Manager, duties that were essential to running the store. *See*

24  Deposition of Mary Gorman at 67-69, attached as Exh. 3 to Pl.'s Opp'n ("Gorman Dep.").

25  Moreover, as Plaintiff herself testified, working as a manager at one of Montblanc's boutiques

26  requires specialized skills and training. *See* Lawler Dep. 24-25 (where Plaintiff distinguishes

27  Montblanc as "luxury retail" and notes that sales associates would need six months of training to be

28  "truly proficient"). Finally, undisputed evidence in the record shows that Montblanc sought to hire

11
Case No.: 10-CV-01131-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    a replacement manager for Plaintiff, but finding a suitable candidate took several months and

2    Montblanc relied on the regional manager and assistant store manager in the meantime.  *See*

3    Gorman Dep. 66-69.

4            As to Defendants' FMLA policy, Plaintiff mischaracterizes the terms of that policy.[6]

5    Montblanc's policy applies only to single locations that have 50 or more employees, or to multiple

6    locations within a 75-mile radius that have more than 50 employees combined.  *See* Exh. 15 to Pl.'s

7    Opp'n.  Employees in those locations may seek up to twelve weeks of "unpaid, job-protected leave

8    in any twelve-(12) month period for certain family and medical reasons."  *Id*. (Policy No. 500.7).

9    The Santa Clara Boutique, however, had only six employees total, and the only other location

10   within 75 miles, Montblanc's San Francisco Boutique, had only five employees.  Accordingly,

11   Plaintiff cannot demonstrate pretext by pointing to the Montblanc's FMLA policy when the terms

12   of that policy do not even apply to her.

13           Thus, Plaintiff's failure to establish pretext is a separate and independent reason for

14   Defendants' entitlement to summary judgment on Plaintiff's first cause of action for disability

15   discrimination under FEHA.

16           **B.  Second Cause of Action: Retaliation (Cal. Gov. Code §12940(h))**

17           Similar to the burden-shifting framework for discrimination claims, a plaintiff claiming

18   retaliation under FEHA must establish a *prima facie* case by showing that: (1) she engaged in a

19   protected activity; (2) the defendant subjected her to an adverse employment action; and (3) there

20   was a causal link between the two.  *See Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1020

21   (2009).  Once the *prima facie* case is established, the burden shifts to the defendant to show a

22   legitimate, nondiscriminatory reason for the adverse action.  *Scotch*, 173 Cal. App. 4th at 1020.

23   Upon making such a showing, the burden shifts back to the plaintiff to establish intentional

24   retaliation.  *Id*. at 1021; *see also Loggins v. Kaiser Permanente Internat.,* 151 Cal. App. 4th 1102,

25   1109 (Cal. App. 4th Dist. 2007) ("If the employer produces evidence showing a legitimate reason

26   for the adverse employment action, 'the presumption of retaliation' drops out of the picture, and

27

28           [6] The Court notes that Plaintiff did not bring a claim under the FMLA in her Complaint.

1   the burden shifts back to the employee to provide 'substantial responsive evidence' that the
2   employer's proffered reasons were untrue or pretextual.") (internal citations omitted).

3         Here, Defendants challenge Plaintiff's *prima facie* case with respect to causation, arguing
4   that Plaintiff was terminated not because of her August 2009 complaint against Defendant Schmitz,
5   but instead because she could not come to work. Defendants also argue that they have met their
6   burden of showing undisputed legitimate non-discriminatory reasons for their actions, and that
7   Plaintiff has not raised a triable issue of pretext. The Court finds that Plaintiff did satisfy her initial
8   burden of establishing a *prima facie* retaliation claim, but did not meet her subsequent burden of
9   establishing that Defendants' proffered reason for termination was pretextual.

10         Plaintiff's termination plainly "materially affect[ed] the terms and conditions of
11   employment," and thus constituted an adverse employment action. *See Yanowitz v. L'Oreal USA,*
12   *Inc.*, 36 Cal. 4th 1028 (2005). Both California courts and the Ninth Circuit have held that "[c]lose
13   proximity in time of an adverse action to an employee's resistance or opposition to unlawful
14   conduct is often strong evidence of a retaliatory motive," and the Court finds that events in this
15   case are close enough in time to meet Plaintiff's burden of showing a prima facie case. *See Scotch*,
16   173 Cal. App. 4th at 1020 (quoting *Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal.
17   App. 4th 1216, 1235 (2006)); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065
18   (9th Cir. 2002). Defendant Schmitz's store-visit was on August 5, 2009, Plaintiff's complaints
19   (letter and phone call to Ms. Gorman) were on August 11 and 13, 2009, and Plaintiff was
20   eventually terminated on October 13, 2009, two months later.

21         However, Defendants have articulated a non-retaliatory reason for termination, namely,
22   Defendants received medical information that Plaintiff could not perform the essential functions of
23   her position with or without reasonable accommodation for several months at the most critical time
24   of the year and provided no evidence that she could ever perform the essential functions. The
25   burden then shifts back to the Plaintiff to provide evidence that the proffered reason was pretextual.
26   At this third stage, California courts have held that mere timing is not itself sufficient. *See Arteaga*
27   *v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353 (2008); accord *Scotch*, 173 Cal. App. 4th at 1020.
28   Besides timing, Plaintiff's only other evidence of pretext is that Defendants did not hire another

13

Boutique Manager until seven months after her termination. As the Court concluded above, Montblanc's delay in hiring a new manager does not constitute the required "substantial, responsive evidence" to establish pretext for unlawful retaliation. *See Loggins*, 151 Cal. App. 4th at 1109. There is no dispute that Plaintiff could not perform the essential functions of a Boutique Manager at the time she was terminated. Moreover, even after the August 5, 2009 store visit, Plaintiff received disability benefits from Montblanc and was not required to perform any of the paperwork Schmitz had requested. On this record, Plaintiff has not satisfied her burden of establishing pretext.

Accordingly, Plaintiff's retaliation claim fails, and Defendants are entitled to summary judgment on Plaintiff's second cause of action.

### C. Third Cause of Action: Harassment (Cal. Gov. Code §12940(j))

The elements of a claim of hostile environment harassment based on disability under FEHA are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *See Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999). The plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized nature." *Id*. at 131. Whereas the federal anti-discrimination statutes treat harassment as a form of discrimination, under FEHA, harassment and discrimination fall under separate statutory prohibitions. *See* Cal. Gov. Code §§ 12940(a), (j)(1). To give effect to this distinction, California courts have distinguished harassing acts from discriminatory acts. *See Reno v. Baird*, 18 Cal. 4th 640, 645-46, 657 (1998); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009). In general, "commonly necessary personnel management actions such as hiring and firing, . . . promotion or demotion, performance evaluations, the provision of support, . . . do not come within the meaning of harassment." *See Reno*, 18 Cal. 4th at 646-47 (quoting *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63-65 (1996)).

Here, Plaintiff's harassment cause of action under FEHA is based on Schmitz's behavior towards her during the August 5, 2009 store visit/inspection. Even assuming Plaintiff's version of

14

the store visit is accurate, Schmitz's actions were not "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."[7] According to Plaintiff, store inspections, even when unannounced, were "routine." The August 5, 2009 store visit appears to have lasted little more than an hour -- Plaintiff points to no other visit or behavior on the part of Schmitz to establish a concerted pattern of harassment. In addition, most of the conduct Plaintiff complains of is not itself harassing behavior, but was instead related to the management of the store (e.g., criticism of placement of eyewear displays, assignment regarding demographics of store customers, and mall-inspection to check out competition). Plaintiff's allegation that Schmitz made his comments in an "abrupt," "brisk," and even "gruff" manner may show that Schmitz was inconsiderate, short, and perhaps mean, but Plaintiff's allegation is insufficient to establish the level of severity required for a harassment claim. *See Lyle v. Warner Brothers Television Productions*, 38 Cal. 4th 264, 284 (2006) ("With respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature."). Moreover, Plaintiff has provided no evidence as to how Schmitz's behavior seriously affected her psychological well-being. *See Aguilar*, 21 Cal. 4th at 130.

In sum, Defendants are entitled to summary judgment on Plaintiff's third cause of action for harassment under FEHA.

### D. Fourth Cause of Action: Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress (IIED) exists when there is: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

---

[7] Plaintiff suggests that Defendants' failure to preserve the store surveillance video of August 5, 2009 points to spoliation of evidence. *See* Pl.'s Opp'n at 17-18. Defendants respond that the video footage is automatically overwritten after thirty days, and by September 5, 2009, Defendants had no hint that Plaintiff was even considering filing suit. The Court need not resolve this dispute, however, because the Court is accepting Plaintiff's version of the August 5, 2009 store visit as true for purposes of ruling on this motion.

defendant's outrageous conduct." *See Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (internal quotations and citation omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1051. The defendant's conduct must also be "intended to inflict injury or engaged in with the realization that injury will result." *Id.*

Defendants correctly contend that, as a matter of law, Schmitz's behavior simply does not rise to the required "extreme and outrageous conduct" for an IIED claim. Schmitz's criticism of Plaintiff was completely work-related, and not so extreme as to exceed all bounds of civilized community. *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 80 (Cal. App. 2d Dist. 1996) (dismissing an IIED claim where allegations only involved criticism of work performance and management of personnel). Moreover, Plaintiff has adduced no evidence of emotional distress, let alone established severe or extreme emotional distress as a result of the August 5, 2009 store visit and interaction with Schmitz.

Thus, Defendants are entitled to summary judgment on Plaintiff's fourth cause of action for IIED.

## IV.   CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment with respect to all four of Plaintiff's causes of action is GRANTED. The May 5, 2011 motion hearing, case management conference, and pretrial conference are vacated. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 15, 2011                     _____
                                          LUCY H. KOH
                                          United States District Judge

Case No.: 10-CV-01131-LHK
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT